## ROBEY v PLAIN CITY COMPANY

Ohio Appeals, 2nd Dist, Madison Co

No 89.  Decided April 13, 1932

John F. Carlisle, Columbus, and James F. Bell, London, for plaintiff in error.
Crabbe, Johnson, Crabbe & Williams, London, for defendant in error.

BY THE COURT

ALLREAD, PJ, HORNBECK and
KUNKLE, JJ.

Seven grounds of error are assigned here as in the trial court, many of which are presented and argued at great length in the extended brief of plaintiffs in error.

The written decision of Judge Emery is before us and we have examined it carefully and are in accord with the conclusion therein reached although we determine the case upon a somewhat different theory.

One of the oldest and probably the leading case in Ohio on the subject under consideration is **Lang v Werk, 2 Oh St, 520.**

It sets out in the second proposition of the syllabus the essentials of a legal and enforcible contract which is challenged as being in restraint of trade. These elements are (1) That the restraint is partial. (2) Founded upon a valuable consideration. And (3) That the contract is reasonable and not oppressive.

Considering these propositions in their order it appears that the restraint in the instant suit is not general. The Theatre building can be used for any other business purpose to which it is or may be adapted, save and except only for public gatherings. Likewise the Princess Theatre business may be conducted at any other place than where located at the time of the execution of the contract. The restriction relates to one purpose, one location. (2) The consideration fixed by the parties, upon demurrer, must be considered as adequate and valid. (3) Upon demurrer, granting the truth of the averments of the petition, it does not appear that the contract is unreasonable nor oppressive unless in the particular hereinafter considered.

Plaintiff in error sets forth under a heading "Summary" 16 specific objections to the amended petition, which in the very nature of things we cannot discuss at length in the necessary limits of this opinion.

The sixth, seventh, eighth and ninth grounds of the summary claim a failure to show the sale of anything, that the whole consideration was based upon an agreement on the part of the defendants to refrain from doing something, viz, to engage in competition. This raises the most important controversy in the case.

Let us note at the outset that the defendants covenanted in two capacities. (1) As owners of the building, known as the Princess Theatre Building. (2) As owners of the Princess Theatre as a business. The contract is silent as to what they agreed to do with the business and yet the argument in the main has been directed to this feature of the case. Certainly the effect of closing the building or discontinuing the business would in part be the same but if either phase of the agreement may be lawfully observed it is the obligation of the court to recognize and enforce it.

The business and good will of the Princess Theatre may have been sold to the plaintiff's but as we view the contract and the averments of the amended petition it does not appear. The amended petition states the consideration, viz: the cash, the note and the five shares of stock and that which the defendants were to perform for

the stated consideration, viz: "Will forever discontinue the use of said Princess Theatre as a show house or auditorium for use of public gatherings of any kind." If more was to be done for the consideration the amended petition does not set it forth.

It does not appear that any of the physical property of the Princess Theatre was sold; nor the business; nor the "good will." The business with its good will, could so far as the contract or other facts are pled, have been sold the day succeeding the signing of the contract under consideration to any one who cared to buy and it could have been conducted at any place other than at the location of the Princess Theatre building. It does not appear that it was a sale of the right to operate the Princess Theatre in its building nor elsewhere because it was not the purpose to operate it there or elsewhere.

There is a broad statement of the law in 6 R.C.L., 790 and 13 C.J., 477, from which latter text we quote, "that the covenant or contract by which the restraint is imposed must be incident to and in support of another contract or a sale by which the covenantee acquires some interest in the business needing protection."

The Ohio cases cited to support the text are **Lufkin Rule Co. v Fringeli, 57 Oh St, 596; The Paragon Oil Co. v Hall, 7 O.C.C., 240; Field Cordage Co. v National Cordage Co., 6 O.C.C., 615.** These cases, all of which are grounded upon the leading case of **Lang v Werk, supra,** carry into the syllabi the proposition that there must be a bona fide purchase of a business and its good will to support the incidental restriction by the seller against again conducting his business.

It is a most interesting fact that in none of these cases, including Lang v Werk, was there any denial that a main contract of sale of a business had been made and in all instances the question at issue related to the extent of the restrictive agreement. The decision in none of these cases required a determination of the necessity of a main contract to which the restrictive agreement was an incident.

In **Grasselli v Lowden, 11 Oh St, 357,** the opinion, in discussing the reasonableness of restriction such as we have under consideration, says,

"So, too, Lord Campbell, in delivering the opinion of the court in Tallis v Tallis, 1 Ellis & Blackburn, 410, after alluding to the case of Mitchell v Reynolds, 1 P. Wms.

192, in which it is said that 'whereon such contract stat indifferenter, and for aught appears, may be either good or bad, the law presumes it prima facie to be bad' remarks: 'But, according to the tenor of the later decisions, the contract is valid, unless some restriction is imposed beyond what the interest of the plaintiff requires; and his interest has been considered to extend very widely. In respect of time, the restriction may be unlimited; and though, in respect of space, there must be some limit, yet contracts have been supported when the area of exclusion was apparently greater than the area of the plaintiff's practice'."

It should be borne in mind that many of these English opinions upon which the American courts have based later decisions arose in very early times and in sections sparsely settled and the cases involved a relinquishment of a trade or means of livelihood, which trade had been secured after apprenticeship. Thus to enforce a bond against such individuals who had covenanted not again to engage in their profession was grossly inequitable and provoked expression such as found in Mitchel v Reynolds, 1 P. Wms., 192.

It is a far cry from the conditions producing the opinions in Mitchell v Reynolds, supra, and Tallis v Tallis, supra, to the circumstances surrounding the instant case.

The effect of a restriction independent of another contract must be considered in the light of reason and the development of the law and we believe it may be reasonable although its natural effect will be in partial restraint of trade.

In the case of The Paragon Oil Co. v Hall, supra, it is said at page 243 of the opinion,

"In the solution of the law as laid down by Shauck, J., in **Cordage Co. v Cordage Co., 6 O.C.C.R., 621,** we may start with the statement of the law. 'That every contract is void, whose only purpose is to place a restraint upon trade, however narrow may be the field of its operation;' This is the form in which all modern authorities state the rule, and thus make it a decided departure from the law which was first announced in the Year Books as that 'all stipulations in restraint of trade are void.' * * * In all restraints of trade where nothing more appears, the law presumes them bad; but if the circumstances are set forth, that presumption is excluded, and the court is to judge of those circumstances and determine accordingly; and if upon them

it appears to be a just and honest contract, it ought to be maintained."

The interest of the public is the paramount concern in contracts such as we have under consideration. The operation of a theatre is not a business affected with a public interest which deprives the proprietor of the right to control it as a private business. Collister v Hayman, 183 N. Y., 250; 1 L.R.A. (N.S.), 1188.

In view of the narrowness of the restriction and the adequacy of the consideration, we would not be disposed to say under the facts in this case, even though it can not be inferred that there was a sale of business or good will, that this contract is unreasonable and should not be enforced against the defendants as sellers of the Princess Theatre business.

But, without respect to the correctness of this position, we are convinced that there is another reason requiring the restriction to be observed.

It is plead that the defendants owned the Princess Theatre building and therefore the real estate upon which it stands. The amended petition avers that they as owners of the real estate agreed for a consideration to a restriction on its use.

In fact, it is this restriction on use made by the defendants as owners of the real estate and not as proprietors of the Princess Theatre which the plaintiff seeks to enforce. Such an agreement was merely a personal covenant not attended with the formality of execution required to pass an interest in real estate but it may be recognized in equity. The binding effect of such an agreement is set forth in Grasselli v Lowden, supra, page 360.

"The contract provides for an entire discontinuance of the business on the specified premises, at the end of five years, from its date, * * *. To attain this end, desired by Lowden and agreed to by Grasselli, Lowden not only discontinued the action then pending, but consented to submit to the annoyance five years longer. * * * Be this as it may, the language is clear and explicit, and the consideration, as we have seen, is sufficiently ample to support it. **That the owner of land may, in the exercise of his complete dominion over it, upon a valuable consideration, part with his right to use it for a specified purpose, is now too well settled to be disputed.**"

The Grasselli case is analogous in many respects to the instant suit. Although it proceeded as an action for damages the contract was challenged as being void because in restraint of trade and the court tested it upon this theory. Grasselli sold nothing to Lowden. The consideration of the contract was the promise of Grasselli to discontinue his business where conducted. The effect of this obviously was in partial restraint of trade. Grasselli never conceded nor was it adjudged that his business was a nuisance. The court sustained the contract.

The restriction in the contract under consideration as it applied to the use of the real estate by the defendants is valid and may be enforced.

Several other phases of the allegations of the amended petition are challenged. It is claimed that it does not appear that the conducting of public gatherings will operate to the damage of plaintiff company. It is obvious that any public event in a building across from a theatre which depends upon the public for its patronage will have a natural and probable tendency to cause those to attend the public gathering who might otherwise patronize the theatre.

It is claimed that the petition fails to allege that the theatre company owns the building in which it is alleged that it operates this theatre. We see no materiality to this claim.

It is also claimed that the petition fails to allege that the agreement applied or applies to the building in which the Princess Theatre is or was operated. A reading of that part of the contract quoted in the petition in conjunction with the allegation thereof that the defendants at the time of the execution of the contract owned and operated the Princess Theatre and owned the building in which the theatre was located is convincing, that the term "Princess Theatre" was used, in part at least, as relating to the building in which the enterprise was conducted.

Complaint is directed against the perpetual character of the restrictive agreement and the judgment entry in conformance thereto, viz:

"That the defendants, their successors and assigns, forever discontinue the use of the Princess Theatre as show house or auditorium for the use of public gatherings of any kind, * * *."

Restraints limited as to space though unlimited as to time have been almost uniformly upheld. 13 C.J., 469 and cases cited.

But the unlimited time referred to meant in most of the cases cited is the life time of the individual who assumed to observe the restriction. Here we have a corporation which may as a corporate entity exist long beyond the lives of the defendants.

It is also probable that the effect of the judgment entry in this case though reciting that it is forever would be construed by the court to mean so long as the Plain City Theatre Co., its successors, lessees or assigns conduct a theatre at the place where the theatre of said company is now operated in Plain City. To this should have been added; but in no event longer than the lives of defendants.

Subject to this modification the judgment of the trial court will be affirmed.

ON APPLICATION FOR REHEARING

Rendered July, 1932

BY THE COURT

Under date of July 25th we are in receipt of what purports to be an application for rehearing in the above entitled case. Of course, the time has long since passed when this application could, under our rules, be taken up by the court.

However, we will informally consider the two questions presented: (1) "The decision of April 13th refers to an amended petition time after time, when there was no amended petition in the record." It is apparent from the decision that there was no misconception of the subject matter of the pleading, to which all discussion in the opinion was directed. Therefore, though the petition may have been improperly designated "amended petition" it is difficult to perceive how any prejudice could result to the plaintiff in error by the inadvertence.

(2) "The decision is in apparent conflict with the case of **Emler v Ferne, 23 Oh Ap, 218 (5 Abs 327), Kex Mfg. Co. v Plu-Gum Co., 28 Oh Ap, 514, (6 Abs 514)."**

We have examined these cases with care and do not find that they are inconsistent or in conflict with the opinion in the instant case for reasons appearing in the opinion.

The test on demurrer was to what extent, if at all, the petition stated a cause of action and responsive thereto how far the judgment could be made to operate. We held that to the extent to which we affirmed the original judgment entry, the contract was enforcible. We gave painstaking attention to the legal questions presented, discussed and considered them at length.

We find nothing in the application which would require either re-hearing or certificate of conflict to the Supreme Court of Ohio.

ALLREAD, PJ, HORNBECK and KUNKLE, JJ, concur.