**WILGUS v INDIAN LAKE AMUSEMENT CO.**

Ohio Appeals, 3nd Dist, Logan Co

No 873. Decided June 5, 1941

**370**

Howard A. Traul, Bellefontaine; Ernest Thompson, Bellefontaine; Emerson, Robinson & McGee, Bellefontaine, for plaintiff-appellee.

Hover & Smith, Bellefontaine; Elmer E. Welty, Bellefontaine; Melvin C. Light, Lima, for defendants-appellants.

## OPINION

### By GUERNSEY, J.

This case comes to this court on an appeal by The Indian Lake Amusement Company, a defendant below, from a judgment of the Court of Common Pleas of Logan County, Ohio.

The case originated in the Common Pleas Court of Logan County, by the filing therein by French L. Wilgus as plaintiff, of a petition for declaratory judgment against The Indian Lake Amusement Company as defendant. Subsequently, on motion of The Indian Lake Amusement Company, Lincoln D. Arthur, Ruth Wilgus and the Russells Point Resort Company were made parties defendant and entered their appearance therein. Subsequently the defendant The Indian Lake Amusement Company filed its amended answer and cross-petition in said action wherein it asked for injunctive relief against plaintiff and its co-defendants as to the subject matter concerning which plaintiff sought a declaratory judgment.

By stipulation of the parties, the cause has been submitted to this court upon the transcript of the proceedings had and evidence taken upon the trial of the cause in the Common Pleas Court.

The pleadings upon which this case stands for trial in this court are the petition of the plaintiff, the amended answer and cross-petition of the defendant The Indian Lake Amusement Company, the reply thereto of plaintiff, and the answer thereto of the defendants Lincoln D. Arthur, Ruth Wilgus and The Russell Point Resort Company.

The defendant The Indian Lake Amusement Company is the assignee of all the right, title and interest of Louis W. Greiner and Charles F. Horvath in, to and under a certain contract in writing and entered into between Louis W. Greiner, Charles F. Horvath, French L. Wilgus, Samuel L. Wilgus and The S. L. Wilgus Company under date of April 15, 1936, and of all the right, title and interest of the said Louis W. Greiner and Charles F. Horvath in the

property and property rights thereby and therein vested or acknowledged to be vested in the said Louis W. Greiner and Charles F. Horvath therein described.

The written contract referred to is in the words and figures following, to-wit:

### "AGREEMENT.

. "This agreement made and executed. by and between Louis W. Greiner, Charles F. Horvath, French L. Wilgus, Samuel L. Wilgus and The S. L. Wilgus Company, this 15th day of April, 1936 Witnesseth that:

"Whereas, the said Louis W. Greiner and Charles F. Horvath are the assignees of a certain option made and executed by the said Samuel L. Wilgus and French L. Wilgus to Milton C. Harrold, granting to the said Milton C. Harrold, or assignees, the privilege of purchasing the stock owned by the said Samuel L. Wilgus and French L. Wilgus in The S. L. Wilgus Company upon certain terms and conditions; and

"Whereas, the said Louis W. Greiner and Charles F. Horvath desire to exercise said option; and

"Whereas, the said French L. Wilgus and Samuel L. Wilgus have refused and now refuse to abide by or recognize said option and do deny the validity thereof; and

"Whereas, the condition, value and amounts of the assets and indebtedness of The S. L. Wilgus Company have changed materially since the execution of said option; and

"Whereas, it is the desire of the parties hereto to settle and adjust the questions arising under or growing out of said options and the execution thereof, and to compromise their respective claims without recourse to litigation;

"Now, therefore, it is agreed by and between the said Louis W. Greiner, Charles F. Horvath, Samuel L. Wilgus and French L. Wilgus, that this agreement or contract be, and it hereby is, substituted for and supersedes and takes the place of said option and/or any and all other contracts, agreements or understandings which have or may-

have heretofore existed between the parties thereto and/or between the parties hereto, or any of them, and The S. L. Wilgus Company, and that this agreement shall be and is a full compromise and settlement of all rights, duties and obligations existing between the parties hereto; and for that purpose, and in consideration of the mutual release by all of the parties herein of all rights, duties, obligations and claims heretofore existing, it is hereby covenated and agreed:

"That the said French L. Wilgus and Samuel L Wilgus shall this day transfer, assign and deliver to the said Louis W. Greiner and Charles F. Horvath all of their right, title and interest in and to the shares of stock owned by them in the S. L. Wilgus Company.

"That the said Louis W. Greiner and Charles F. Horvath, shall, and do hereby, confirm and ratify, and shall this day, as majority shareholders and directors of The S. L. Wilgus Company, confirm and ratify on the minutes of said company, all and every act and action heretofore made and done by the S. L. Wilgus Company and/or its directors and officers in the distribution, application and disbursement of the money heretofore received as insurance upon the dance hall destroyed by fire; and confirm and ratify all payments heretofore made upon the indebtedness of the said The S. L. Wilgus Company, except that any and all rights or claims which the said Louis W. Greiner and Charles F. Horvath and The S. L. Wilgus Company have or may have against M. C. Harrold and/or S. N. Arni on account of payments made to the said M. C. Harrold and/or the said S. N. Arni are hereby saved; and confirm and ratify the action of The S. L. Wilgus Company, and/or its directors and officers, on March 25, 1936, in paying to French L. Wilgus the balance then remaining in its treasury (in the approximate sum of nine hundred dollars) as partial satisfaction of the indebtedness of said Company to said French L. Wilgus; and confirm and ratify the action of The S. . L. Wilgus Company, and/or its directors and officers, in bar-

gaining. selling and conveying to French L. Wilgus, in satisfaction of the remainder of his claims against the said Company, the following personal property: One large size, barrel type Moslet time-lock safe, and all buildings, chattels, equipment furniture and furnishings and other personal property of every kind and nature owned by The S. L. Wilgus Company (and not already owned by the said French L. Wilgus) and situated or located upon the land leased by Ruth Wilgus from the State of Ohio on the west side of the Lagoon at Russells Point, Ohio.

"That the said Louis W. Greiner and Charles F. Horvath, for themselves and for The S. L. Wilgus Company, hereby waive and release any right, title or interest in, or any claims to any and all property, real, personal or mixed, situated or located on the west side of the Lagoon in Russells Point, Ohio, and give the said French L. Wilgus full and clear title thereto.

"That the said French L. Wilgus and Samuel L. Wilgus hereby waive and release any right, title or interest in, or any claim to any and all property, real, personal, or mixed, situated or located on the west side of the Lagoon in Russells Point, Ohio, save and except a certain one story, five or six room cottage built by Samuel L. Wilgus and located on said east side, which cottage is hereby mutually agreed shall be the property of French L. Wilgus and which cottage he shall remove from said east side on or before the 31st day of May, 1936, and except household goods and personal effects of Samuel L. Wilgus in the two story house on the Cain leasehold, and except the "Spa" swimming pool and equipment which shall continue to be the property of Samuel L. Wilgus and to which he shall have right of ingress and egress for himself, his employes and patrons.

"That the bridge spanning the Lagoon and connecting the east side owned by The S. L. Wilgus Company and the west side owned by French L. Wilgus shall be owned as tenants in common by the said The S. L. Wilgus Company, or its successors, and French

L. Wilgus, his executors, administrators, heirs or assigns, and shall be kept open for ingress and egress to and from both sides at all times; that said bridge shall be adequately insured and shall be kept in good repair: and that the expense of such insurance and repair and other expenses connected with said bridge shall be borne equally by the said The S. L. Wilgus Company and French L. Wilgus.

"That the said French L. Wilgus may have and keep a Board Walk on the land on the west side of the Lagoon extending from the hotel to the highway and shall have the right to place or maintain, or cause to be placed or maintained, thereon or thereby such concessions as vending stands or establishments for candy, peanuts, popcorn, drinks, frozen custards, ice cream, cones and similar wares; fortune teller; guess-your-weight; picture machines; corn games and the usual line of concessions heretofore had or maintained on the west side of said Lagoon at Russells Point, Ohio.

"That the said French L. Wilgus shall have, in addition to the dancing space he now has, a space approximately eighty (80) feet by one hundred and eight (108) feet in area for dancing and/or roller skating in the building known as the Marathon building heretofore constructed under a contract between The S. L. Wilgus Company, The National Marathon (company), predecessor of the Helene Amusement Company. Said Marathon building shall not be tied together with the Beer Garden, unless for use as additional seating capacity.

"That the said French L. Wilgus for himself and his heirs and assigns hereby covenants and agrees that he will not devote or use for dancing any space, in addition to that above set forth, and covenants and agrees that he will not place or install any rides or enter into the amusement park business on the west side of the Lagoon except as above set forth.

"That the said The S. L. Wilgus Company and the said Louis W. Greiner and Charles F. Horvath hereby coven-

ant and agree, for themselves, their successors, heirs and assigns, that they will not sell or handle any intoxicating liquors of any kind, save and except beer, and will not allow the same to be sold or handled upon the premises now or hereafter owned or controlled by them, or any of them, at Russells Point, Ohio.

"That the said The S. L. Wilgus Company and Louis W. Greiner and Charles F. Horvath, for themselves and their successors, heirs and assigns, hereby covenant and agree that they will not have, give or permit any floor shows, or any similar entertainments or shows upon the premises owned or controlled by them at Russells Point, Ohio, except that they shall have the right to engage and employ dance bands or orchestras of nationally known reputation and permit such bands or orchestras to give or present the entertainment or entertainers which regularly accompany such band or orchestra upon its engagements, and except, that they shall have the right to present other exhibitions and attractions not of floor show type.

"That French L. Wilgus assumes all liability which may be held or found to exist on the part of himself, Ruth Wilgus, and/or The S. L. Wilgus Company to the Helene Amusements Company in the suit now pending against said French L. Wilgus, Ruth Wilgus, and The S. L. Wilgus Company, growing out of the moving of the Marathon building; and the said French L. Wilgus covenants and agrees to hold the said The S. L. Wilgus Company harmless from any costs or damages in or in connection with said suit.

"That the said The S. L. Wilgus Company covenants and agrees that it will pay all rentals which shall hereafter become due to H. Clayton Cain, or any other person upon leased land on the east side of the Lagoon, and that it will save and hold French L. Wilgus and Samuel L. Wilgus harmless from any liability under the present lease with H. Clayton Cain and/or any and all other rentals on said east side.

"IN WITNESS WHEREOF, the parties

hereto have hereunto set their hands on the day and year first above mentioned.

"Signed in the presence of:
Fred M. Kerr · Samuel L. Wilgus
L. H. Notaugel French L. Wilgus
Louis W. Greiner
Charles F. Horvath
The S. L. Wilgus Co.,
By French L. Wilgus,
Pres."

The covenants of said written agreement which under the pleadings are in controversy in this action, are as follows, to-wit:

1. That the said French L. Wilgus may have and keep a board walk on the land on the west side of the lagoon extending from the hotel to the highway and shall have the right to place or maintain, or cause to be placed or maintained, thereon or thereby such concessions as vending stands or establishments for candy, peanuts, popcorn, drinks, frozen custards, ice cream, cones and similar wares; fortune teller; guess-your-weight; picture machines; corn games and the usual line of concessions heretofore had or maintained on the west side of said lagoon at Russells Point, Ohio.

2. That the said French L. Wilgus shall have, in addition to the dancing space he now has, a space approximately eighty (80) feet by one hundred and eight (108) feet in area for dancing and/or roller skating in the building known as the Marathon Building heretofore constructed under a contract between the S. L. Wilgus Company and The National Marathon (company), predecessor of the Helene Amusement Company. Said Marathon building shall not be tied together with the Beer Garden, unless for use as additional seating capacity.

3. That the said French L. Wilgus for himself and his heirs and assigns hereby covenants and agrees that he will not devote or use for dancing any space, in addition to that above set forth, and covenants and agrees that he will not place or install any rides or

enter into the amusement park business on the west side of the Lagoon except as above set forth.

The questions raised by the pleadings and the evidence are as follows:

1. Has the validity of the three covenants of the written agreement in controversy in this section been adjudicated in case number 19560 in the Common Pleas Court of Logan County so as to preclude the plaintiff and the other defendants to the cross-petition from asserting their invalidity as a defense to the cross-petition?

2. If the validity of any of the three covenants has not been so adjudicated in said cause, is such covenant valid?

3. If valid, do said covenants restrict the plaintiff and the other defendants to the cross-petition from doing the various things the evidence shows they have done or are threatening to do which are alleged in the cross-petition constitute violations thereof, entitling defendant to the injunctive relief prayer for?

These questions will be considered in the order mentioned.

1. An inspection of the pleadings and journal entries in case number 19560 in the Common Pleas Court of Logan County, which are identified and attached as exhibits to the transcript of the proceedings in the Common Pleas Court, shows that The Indian Lake Amusement Company, as assignee of the rights and interest of Louis W. Greiner and Charles F. Horvath acquired under the written agreement involved in this action, was plaintiff, and French L. Wilgus, Ruth Wilgus, Edward Maddox, Edward Maddox & Son, a co-partnership, and The Russells Point Resort Corporation were defendants.

The three covenants mentioned were pleaded by The Indian Lake Amusement Company, plaintiff, as a basis for injunctive relief against the defendants, from constructing, maintaining and operating a new open air dancing pavilion, not in said Marathon building, in violation of the terms of said contract.

Answers were filed to said petition by the various defendants, in which the question of the validity of such restricted covenants was not raised.

On October 2, 1937, the following journal entry of judgment was made in said case, to-wit: "This cause came on for hearing on the pleadings, evidence, arguments of counsel and briefs, and was submitted to the court. The court on consideration thereof find on the issues joined between the plaintiff The Indian Lake Amusement Company, Inc., and the defendants French L. Wilgus, Ruth Wilgus and The Russells Point Resort Corporation, in favor of plaintiff and against the defendants. Accordingly it is ordered, adjudged and decreed that the defendants French L. Wilgus, Ruth Wilgus and The Russells Point Resort Corporation be and the same are hereby perpetually enjoined from devoting or using for dancing any space, in addition to that provided for in what is known as the 'Jones Lease' at Russells Point, Logan County, Ohio, as described and referred to in the petition and amended petition in this case. Exceptions are noted."

Under date of October 2, 1937, there was filed in said action a separate finding of facts and conclusions of law which was entered upon the journal of said court, in which there is a conclusion of law that the second of the three written covenants of the written agreement in controversy in this action is a valid and legal restriction upon the use of the west side of the Lagoon at Russells Point, Ohio, by the defendants, and the further conclusion of law that this covenant is binding upon all of the defendants.

The doctrine of res judicata embodies two main rules which may be stated as follows: (1) The judgment or decree of a court of competent jurisdiction upon the merits concludes the parties and privies to the litigation and constitutes a bar to a new action or suit involving the same cause of action either before the same or any other tribunal. (2) Any right, fact, or matter in issue, and directly adju-

dicated upon, or necessarily involved in, the determination of an action before a competent court in which a judgment or decree is rendered upon the merits is conclusively settled by the judgment therein and cannot again be litigated between the parties and privies whether the claim or demand, purpose, or subject matter of the two suits is the same or not. 34 C. J. §1154, page 742.

The identity of the parties to the judgment in cause number 19560 is the same as the identity of the parties to the instant action except that Lincoln D. Arthur is an additional party. The evidence in this action, however, shows that any claim that Lincoln D. Arthur may have in the subject-matter is that of a privy to the plaintiff French L. Wilgus, so that insofar as the application of the doctrine of res judicata to the instant action is concerned, there is identity of parties to the judgment mentioned, and to this action. The cause of action in which the judgment mentioned was rendered differs from the present cause of action in that the relief sought and granted in that action was an injunction enjoining the defendants from constructing, maintaining and operating a new open air dancing pavilion, not in said Marathon building, in violation of the terms of said contract, while the cause of action pleaded in the cross-petition in the present action is for injunctive relief against the plaintiff and the other defendants to the cross-petition from using the new building described in the cross-petition, or any part or parts thereof, for dancing or roller skating purposes; and from constructing more than one Board Walk on the land on the west side of the lagoon and from using such Board Walk in connection with their business or businesses, and from placing thereon or elsewhere on the premises identified as the "Jones Lease" on the west side of the lagoon at Russells Point; or cause to be placed thereon and maintained, any concessions other than those provided for in said contract. The parties being iden-

tical but the causes of action not being identical, the second rule of the doctrine of res judicata, above mentioned, is applicable to the rights of the parties in the present action.

Although the question of the validity of the restrictive covenants mentioned was not directly raised in cause number 19560, the validity of the second and third covenants, above set forth, was necessarily involved in the determination thereof, and their invalidity would constitute a defense to the action inherent or involved in the same transaction as the defendant's cause of action set forth in its cross-petition in the instant case, which should have been raised in that case.

The finding of facts and conclusions of law which were entered upon the journal, as above set forth, constituted an adjudication of the validity of the second covenant above mentioned. Although pleaded, the validity of the first covenant above mentioned was not involved in or adjudicated in cause number 19560. The third covenant above mentioned was involved in the subject matter of the action and in the determination thereof, and its invalidity would constitute a defense to the action inherent or involved in the same transaction as the defendant's cause of action pleaded in its cross-petition in the instant case.

A judgment for the plaintiff sweeps away every defense inherent or involved in the same transaction as the plaintiff's cause of action, that should have been raised against the action and this for the purpose of every subsequent suit whether founded upon the same or a different cause, 15 R. C. L. 970. 34 C. J. §1267, page 856.

Under the foregoing rule the third covenant was also adjudicated a valid covenant in said action.

The adjudication in cause number 19560 from which no appeal was taken therefore has the legal effect of precluding the plaintiff and the other defendants to the cross-petition from availing themselves of any defense to the cross-petition, based on the claimed

invalidity of covenants two and three above mentioned, but does not preclude them from making such a defense as to covenant number one in the instant action.

2. As the validity of covenant number one has not been adjudicated and is involved in this action, we will now consider whether such covenant is valid.

From the written agreement itself and from the evidence it appears that the parties thereto, at the time the agreement was entered into, had certain joint interests in. certain leaseholds and certain public amusement, recreation, entertainment, food and drink enterprises located at Russells Point on Indian Lake, Logan County, Ohio, and that said agreement was entered into for the purpose of dividing said leaseholds and said public amusement, recreation, entertainment, food and drink enterprises between the parties in such a manner that the parties would own parts thereof in severalty, subject to certain restrictions on the use by each of the property allocated to him or them under the terms of said agreement, as well as for the purpose of compromising certain claims each had or was asserting against the other.

The agreement provides for the waiver and release by Louis W. Greiner and Charles F. Horvath, for themselves and for the S. L. Wilgus Company, of any right, title or interest in or claims to any and all property, real, personal or mixed, situated or located on the west side of the lagoon in Russells Point, Ohio, and giving the said French L. Wilgus full and clear title thereto, except as to certain specific property not involved herein; and further provides for a waiver and release by French L. Wilgus and Samuel L. Wilgus, of any right, title or interest in or any claims to any and all property, real, personal or mixed, situated or located on the east side of the lagoon in Russells Point, Ohio. except certain specific property not involved herein.

The written agreement therefore constituted a bargain by the transferor of property and business, ▆▆▆▆ ▆ not to compete with the buyer in such a way as to injure the value of the property and business sold. It also constituted a bargain by the buyer of the property and business not to use it in competition with or to the injury of the seller. Such bargains do not impose unreasonable restraint of trade unless effecting, or forming part of a plan to effect, a monopoly. Restatement of the Law of Contracts, Volume 2, page 995, §516.

There is no evidence tending to show that the bargains incorporated in the agreement in controversy effected, or formed part of a plan to effect, a monopoly, and consequently such restrictive covenants, including the one hereinbefore designated as covenant number one, are valid. **Roby v Plain City Company, 13 Abs 257.**

3. The validity of all of the covenants in controversy being established, it is necessary to determine whether the acts committed or threatened to be committed by the plaintiff with reference to the reconstruction of the Marathon building so as to enlarge the same and provide facilities for public dances additional to those existing at the time the agreement was entered into, and whether the maintenance of certain new concessions along the Board Walk constitute violations of said covenants.

It appears from the evidence that at the time the written agreement was entered into that the Marathon building referred to therein had a floor space approximately eighty feet by one hundred and eight feet in area and had been used for the purpose of conducting marathon dances, but had not been in use for any purpose for some time. That the floor space on which the marathon dancers had performed their exercises was separated from the balance of the floor space in the building by a railing leaving aisles along the sides of the space devoted to such exercises, for the use of spectators. In 1939 plaintiff built a large building which is called Danceland, incorporating the building known as the Marathon Build-

ing. The north and south walls of the Marathon Building were removed; the east wall was left intact. Doors were placed along the west wall so as to occupy nearly half the space. The old floor of the Marathon Building was used as a foundation for a new floor. A substantial extension was built to the north. On the south side of what had been the Marathon Building approximately double floor space was added in the new building, south of what had been the old Marathon Building. A five foot outside floor extension was built along the entire west side of the new building. This five foot area is open. This entire new structure is used exclusively for dancing purposes but the part of the room or floor where the dancers engage in their exercises is somewhat less in area than the dimentions of the Marathon Building mentioned in the contract. The railings along the sides of the space used for the physical acts of dancing are in approximately the same position they occupied in the Marathon Building before the same was reconstructed. To conduct public dancing, the space required for the orchestra, the space required for the spectators, and the promenades, sanitary accommodations, and so forth, is more than double the space used for actual dancing.

The second and third covenants mentioned specifically provide that the plaintiff shall have, in addition to the "dancing space" he had at the time the contract was entered into, which is not in dispute in this action, a space approximately eighty feet by one hundred and eight feet in "area for dancing" and/or roller skating in the building known as the Marathon building, and that he "will not devote or use for dancing, any space in addition to that above set forth"; and contains a further provision that the Marathon building shall not be tied together with the beer garden, unless for use as additional seating capacity, which provision is not in controversy.

Whether the plaintiff, in the construction and operation of Danelnd as it is constructed and operated, has violated the restrictions contained in these two covenants, depends upon the sense in which the phrases "dancing space", "area for dancing", "will not devote or use for dancing, any space, in addition to that above set forth", are used in the covenants.

In determining the sense in which these phrases were used, the circumstances surrounding the parties at the time the agreement was entered into should be considered. One of the controlling circumstances is that within the area prescribed in the agreement as "dancing space" and "area for dancing", there then existed a delimited space for marathon dancing exercises suitable for dancing and/or roller skating exercises. From this circumstance it clearly appears that it was the intention of the parties in the use of the phrases mentioned, to designate this delimited space as the space which plaintiff might devote to dancing and/or roller skating exercises, without regard to how much additional space might be devoted to facilities for conducting public dancing and/or roller skating. Neither of the covenants mentioned nor any other provision of the agreement, either expressly or impliedly restricts or inhibits the plaintiff from reconstructing the Marathon building in the manner he has reconstructed it and from adding space in addition to the space delimited for dancing exercises for the purpose of providing additional facilities for public dances. Therefore the acts committed or threatened to be committed by the plaintiff with reference to the reconstruction of the Marathon building in the manner he has reconstructed it and his use of the same in the manner he has used it, do not constitute violations of these restrictions contained in said covenant.

It appears from the evidence that the plaintiff, since said agreement was entered into, has maintained or is maintaining a "Ripley Believe-It-Or-Not" concession, an animal show, and a "Buried Alive" show along the Board

378

Walk mentioned in covenant number one above referred to. The maintenance of such exhibitions constitutes a violation of said covenant which should be enjoined.

For the reasons mentioned, the prayer of the amended answer and cross-petition will be denied except that the plaintiff will be enjoined from operating or maintaining along said Board Walk the three concessions the maintenance of which has been found to be in violation of said covenant, and any other shows, concessions or exhibitions not coming within the class which plaintiff is permitted to maintain along said Board Walk under the provisions of said covenant. It will be further ordered that plaintiff pay all the costs herein, and execution is awarded against him therefor.

KLINGER, PJ. and CROW, J., concur.